UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10164-DPW |
| | ) | |
| SHON ROWELL | ) | |

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUPPRESS (SEARCH AND SEIZURE)

Defendant, Shon Rowell, respectfully moves that this Court suppress from evidence at his trial (1) statements made and items seized upon his arrest outside of an apartment at 25 Wayne St., (2) selection of his picture from photo arrays prepared by Boston Police, and (3) items subsequently observed or seized, including a gun, from 25 Wayne St., Apartment No. 9 as a result of a search warrant obtained by Boston Police.  As grounds for this motion, defendant states that the evidence was obtained in violation of his rights under the Fourth Amendment to the Constitution.

**RELEVANT FACTS**

The Government's Version of the Defendant's Seizure

The following facts are derived from an affidavit submitted on March 1, 2004 authored by Boston Police Detective Mark Cooper, a Boston Police Incident Report dated March 1, 2004 written by Office Brian Smigielski, and a transcript of a 911 telephone call received by Boston Police.  The affidavit is attached as Exhibit A.  The police report is attached as Exhibit B.  The transcript of the call, along with relevant police response, is attached as

Exhibit C.

Shortly after 4:00 a.m. on March 1, 2004, Boston Police dispatchers received a call from an unidentified man.  The caller, who refused dispatcher efforts to reveal his name, alleged that a man named "Rob" at 25 Wayne St. Apartment #9 had recently pulled a gun on him.  The call was later determined to have come from a pay telephone next to a gas station at 538 Blue Hill Avenue, two blocks away from 25 Wayne St.  The caller provided a generic description of skin color, body style and clothing.  Because the call was from a pay telephone, police were unable to call back to obtain further information.  The dispatcher urged the caller to go back to 25 Wayne St.  The caller was reluctant.

Police cruisers responded to the area of 25 Wayne St.  One cruiser traveled to the pay telephone, only to find no one there. Another cruiser suggested that the "Rob" referred to might well be Rob Hextall of nearby Hutchings St.; one cruiser tried to find the address on Hutchings.

Other officers, including Officers Smigielski, Farrell, McNeil and O'Neil, went into 25 Wayne St. and up the stairs to Apartment #9 on the third floor.  They knocked on the door and identified themselves as police.  A male voice answered the door and informed police that he did not live there and thus would not open the door.  While the officers in the hallway tried to

persuade the male to open the door, other police surrounded the apartment building and assembled an "Entry Team."

Another police cruiser encountered a man at the corner of Wayne and Maple Streets.  The officer in the cruiser identified the man variously as the "caller" or the "victim" and relayed the information that "Rob" was at 25 Wayne St. and had showed a firearm.

Meanwhile, defendant stepped out of the door of Apartment #9 and was confronted by police officers in the hallway.  Officers quickly "subdued and restrained" him.  Notwithstanding the fact that defendant was arrested outside of the apartment, Officer Smigielski entered the apartment to perform a "protective sweep" and detained a black female later identified as Jacqueline Santiago.

Officers transported defendant, Santiago, and the man encountered at Wayne and Maple to Area B headquarters.  Police determined defendant's identity, and identified the man encountered at the corner of Wayne and Maple Streets as Terrence Phillips.  Police obtained a photograph of defendant and, in the course of obtaining a statement from Phillips, had Phillips identify defendant as the person who displayed a gun at 25 Wayne St.  Another individual also identified defendant as a person who, along with Santiago, robbed her the previous evening.  Based on this information, police sought and obtained a search warrant

for 25 Wayne St., Apartment #9.  Execution of the search warrant
resulted in the seizure of a firearm and other evidence.

Terrence Phillips' Version of the Events Leading Up to
Defendant's Seizure

The following facts are derived from the expected testimony
of Terrence Phillips as derived from two interviews conducted on
September 8, 2004 and January 30, 2005.  See Affidavit of Winfred
Meadows-Marquez in Support of Defendant's Motion to Suppress,
attached hereto as Exhibit D.

Phillips was not the male who called the police.  Rather, he
was in the process of leaving 25 Wayne St. after attempting to
meet his friend, "Butter" Larkins when he saw a police cruiser
outside.  He tried to walk away from the building and the police.
Police detained him at the corner of Wayne and Maple Streets.
They asked him if he had a gun and other questions, including his
name.  He told them he didn't have a gun, but did not give them
his name.

Officers put Phillips inside a cruiser and continued
questioning him.  He still refused to give his name.  He saw
other police cruisers arriving throughout his questioning.  While
he was being questioned, he saw a man being led to a cruiser in
handcuffs.  Shortly after that, the police took him down against
his will to the Roxbury police station.  While there, Phillips
eventually told police his name.

-4-

Defendant's Version of the Defendant's Seizure

The following facts are derived from the Affidavit of Shon Rowell in Support of Defendant's Motion to Suppress, attached hereto as Exhibit E.

Rowell was a guest of another at 25 Wayne St., Apartment #9. While there, he heard somebody knocking at the door asking for "Rob." His host was not then in the apartment and so he did not let the people in. The person outside the door kept repeating that he was "Mike" looking for "Rob." He told this person that there was no Rob in the apartment and he would not let them in.

After awhile, the people outside the door told Rowell they were police officers. Rowell, now unsure of who was actually outside the door, told the people that he did not have the authority to let them in.

Some minutes later, he decided to leave the apartment. When he opened the door he saw at least five police officers with their guns drawn. The moment he opened the door the officer closest to him grabbed him and told him to get down on the floor. Other officers tackled him and put handcuffs on him. They took him down the stairs and into a waiting police cruiser.

## ARGUMENT

ROWELL'S SEIZURE UPON LEAVING THE APARTMENT WAS AN ARREST UNSUPPORTED BY PROBABLE CAUSE; THE FRUITS OF THAT ILLEGAL ARREST MUST THEREFORE BE SUPPRESSED.

A seizure of the person within the meaning of the Fourth and

Fourteenth Amendments occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" <u>Florida v. Bostick</u>, 501 U.S. 429, 437 (1991).  Here, the government cannot bear its burden of proving the seizure of the defendant was justified by any recognized exception to the warrant requirements of the Fourth Amendment.  <u>Coolidge v. New Hampshire</u>, 403 U.S. 443 (1971).

A.   <u>The Seizure Was an Arrest</u>

1.   <u>The Defendant was seized within the meaning of the Fourth Amendment.</u>

In <u>United States v. Mendenhall</u>, 446 U.S. 544 (1980), Justice Stewart wrote that examples of circumstances that might indicate a seizure tantamount to an arrest include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled."  446 U.S. at 554 (opinion of Stewart, J.).

The circumstances surrounding defendant's encounter with the Boston police demonstrate that defendant was seized and arrested within the meaning of the Fourth Amendment regardless of which version of that encounter this Court adopts.  According to the government's version, the Boston police had surrounded the

-6-

building and had begun assembling an "Entry Team" even before
defendant attempted to leave the apartment.  At that point -
prior to the observation of any gun or corroboration of the then-
anonymous phoned-in tip – the defendant was seized within the
meaning of the Fourth Amendment.  This was not a police-citizen
encounter where the officers merely rolled down their window and
asked defendant for a moment of his time.  Compare United States
v. Cardoza, 129 F.3d 6, 14-15 (1st Cir. 1997)(no seizure where
officers in unmarked car pulled over to curb; rolled down window
and asked the defendant "what's up?"; and defendant turned and
approached patrol car); United States v. Young, 105 F.3d 1, 5-6
(1997)(no seizure where officers pulled cruiser to curb alongside
the defendant; rolled window down and asked defendant if he had a
minute to speak with them; and defendant said "sure").  Rather,
this was a circumstance where the presence of many officers,
substantial physical touching of the person of the citizen, and
immediate restraint of liberty indicated that compliance with the
officer's orders was compelled.  Mendenhall, 446 U.S. at 554.

     Under defendant's version of the encounter with the Boston
police, defendant's seizure before any police observation of a
gun is patent.  According to defendant, officers with guns drawn
immediately ordered him to the floor and tackled him, then
handcuffed him and took him to the station.  Certainly under
these circumstances defendant would not have felt free to

-7-

terminate his encounter with Nolan and the other officers.
Indeed, defendant's compliance with officers was compelled.  In
these circumstances, the seizure was tantamount to arrest
requiring probable cause.  Such a seizure, unsupported by
probable cause, will result in the suppression of the fruits of
the unlawful detention.  <u>Kaupp v. Texas</u>, 538 U.S. 626 632-633
(2003), <u>citing</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 486
(1963).  In these circumstances, probable cause was lacking, the
arrest was illegal, and the fruits of the arrest must be
suppressed.  <u>Medenhall</u>, 446 U.S. at 554.

    2.   The Officers' Arrest Was Without Probable Cause and So
        <u>Violated The Fourth Amendment</u>

The officers had no arrest warrant authorizing the detention
or arrest of the defendant.  Accordingly, the government bears
the burden of demonstrating that the warrantless seizure was
permissible under a recognized exception to the warrant and
probable cause requirements of the Fourth Amendment.  <u>Coolidge</u>,
<u>supra</u>.  The government cannot make this showing.

Even under the best view of the government's version, the
police, at the time of their decision to surround and prepare to
enter the apartment to arrest defendant, had little more than a
tip from a purported witness with absolutely no demonstrated
reliability that some type of criminal activity was afoot.  <u>See</u>
<u>United States v. Khounsavanh</u>, 113 F.3d 279, 284 (1st Cir. 1997)
(veracity inquiry focuses on whether corroborative facts have

reduced "the probability of a lying or inaccurate informer"). Here, the only corroboration of the tip was that there was a male in a particular apartment identified by the caller. Such scanty, largely uncorroborated information is simply insufficient to justify the seizure made here. After all, "[the police] may [not] seek to verify [mere] suspicions by means that approach the conditions of arrest." Florida v. Royer, 460 U.S. 491, 499 (1983)(plurality opinion).

Defendant's reticence in opening the door to the police is irrelevant to the probable cause analysis. See Khounsavanh, supra, 113 F.3d at 284 (detail about irrelevant non-incriminating facts "not particularly probative" to probable cause determination). An invited intrusion by police is precisely what the Fourth Amendment forbids by giving every citizen the right to be secure in his dwelling. See U.S. Const. Amend. IV. Defendant's invocation of this right is perfectly reasonable and permissible. To infer evidence of wrongdoing, as the police apparently did here, by such a refusal is to turn the warrant requirement on its head.

Moreover, according to Phillips' version of events, at the time Phillips was questioned by an officer police had likely already taken defendant into custody based on a telephone call made by someone else. Under this scenario, the lack of probable cause is patent: all that the police would have had was the

-9-

worst kind of anonymous, uncorroborated rumor simply insufficient
to justify defendant's arrest.  See United States v. Brooks, 350
F.Supp. 1152, 1153-54 (E.D. Wisc. 1971)(requiring reliability
showing or corroboration even where tip originated from named
citizen-informant).

Seizures based on nothing more than a hunch that a crime may
have been committed have long been universally condemned.  See
United States v. Lefkowitz, 285 U.S. 452 (1932); Kremen v. United
States, 353 U.S. 346 (1957); Kaupp, supra.  In short, this is a
case where law enforcement, lacking probable cause to arrest,
unlawfully seized defendant in a manner tantamount to arrest in
order to further their investigation.  Kaupp, supra.

3.    Seizure of Items Pursuant to the Search Warrant, As
      Well As Witness Identifications of Defendant, Flowed
      From the Illegal Arrest and Thus Must Be Suppressed As
      Fruit of the Poisonous Tree.

Defendant's arrest and detention resulted in an officer
entering the apartment to detain Jacqueline Santiago,
identification information which later led to a photo array
including the picture of defendant.  This information was in
turn, along with the circumstances of defendant's arrest, used to
secure a search warrant for Apartment #9 at 25 Wayne St.  The
identifications and subsequent seizures as a result of that
search warrant were therefore a direct result the illegal arrest
of defendant and must therefore be suppressed.  Kaupp, supra,538
U.S. at 632-633; Wong Sun v. United States, 371 U.S. 471, 486

-10-

(1963).

**CONCLUSION**

For the foregoing reasons, the defendant respectfully moves that this Court suppress from evidence at trial a gun and any other items allegedly observed or seized during a warrantless search and seizure of him on March 1, 2004.

SHON ROWELL,
By His Attorney:


/s/ Timothy Watkins
Timothy Watkins
 B.B.O. #567992
Federal Defender Office
408 Atlantic Ave., Third Floor
Boston, MA  02110
(617) 223-8061


May 2, 2005