```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
                                      )
UNITED STATES OF AMERICA              )
                                      )
          v.                          )   CR. NO. 04-10164-DPW
                                      )
SHON ROWELL                           )
                                      )
```

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS (SEARCH AND SEIZURE)**

**Introduction and Summary**

The defendant contends, based on <u>Wong Sun</u> and the fruit of the poisonous tree doctrine, that all of the evidence in this case, including the items recovered during the warrant-based search of the unit 9 at 25 Wayne Street and his identification by two witnesses from a photo array, must be suppressed because this evidence flowed from his "arrest" by the police, which he contends was unlawful.  This legal argument in turn is based on a number of factual assertions which at core suggest that police officers lied in completing their reports.  Among other things, the defendant contends that Terrence Phillips did not place the 911 call and that the defendant did not attempt to elude or struggle with the police as they claimed.

In light of the evidence adduced at the hearing, the defendant's argument fails easily.  Whether viewed as an arrest or stop, officers responding to Terrence Phillip's 911 call of a man inside the apartment with a gun seized the defendant only after he came out of the apartment, refused orders to get down,

and then engaged several officers in a violent struggle in the stairwell.  The officers were justified in seizing the defendant at that point because they had reason to believe based on Terrence Phillip's 911 call and the defendant's behavior that he might be armed.  Even assuming <u>arguendo</u> that the police unlawfully arrested the defendant, the defendant's motion still fails because the only evidence that flowed from the defendant's arrest was his identity, which is never suppressible.  The use of the defendant's identity to obtain a booking photo for the array was therefore proper, and the resulting identifications coupled with the 911 call and the defendant's behavior were sufficient to justify the search warrant.  The Court therefore should deny the motion.

**Relevant Facts**

The principal factual assertions the defendant made in support of his motion were flatly and uniformly contradicted by the witnesses.  In seeking to argue that the police were acting on the basis of nothing more than an anonymous tip, for example, the defendant asserts that Terrence Phillips denied placing the 911 call to the police, and did not tell the police his name until police later brought him to the police station.  However, Terrence Phillips testified that he did in fact place the 911 call and did identify himself for the police, and that he lied to the defendant's investigator out of fear.  Phillips' testimony

that he did in fact go to the apartment prior to placing the call is corroborated by Jacqueline Santiago, who testified that the events he talked about in the 911 call did happen, and that the police arrived not long after Phillips left the apartment.  His testimony is also corroborated by that of the police officers who interacted with him, who testified that he told them he placed the call.  Finally, Phillips' testimony is consistent with the radio dispatch log entered into evidence, which shows that the 911 caller identified himself as Terrence Phillips, before the defendant was arrested.

Suggesting that the various police narratives are not credible, the defendant further contends that he did not open the door to the apartment because he didn't know whether it was actually the police or someone else, and, that when he did open the door, the police immediately grabbed him and forced him to the ground.  However, various police officers testified that the defendant repeatedly requested to speak to two particular officers by name, and Jacqueline Santiago testified that the defendant at one point looked out the window and remarked that the building was surrounded by officers, demonstrating that the defendant knew it was the police rather than some unknown civilian(s) who were at the door.  Further, Officers O'Neil, McNeil and Robinson all testified that the defendant, who appeared agitated when he came out, repeatedly failed to comply

3

with their orders to get down and continued to proceed towards the stairwell, resulting in the struggle to subdue him. Their testimony on this point was consistent with Jacqueline Santiago's who stated that she heard the defendant yelling and heard sounds like people were going down the stairs, and was also consistent with the second 911 call by a building occupant reporting what appeared to be a fight taking place in the stairway.

### Argument

As the government argued previously, and as the evidence supports, the defendant was not seized until he submitted to the officers' show of authority, which was not until after he came out of the apartment, refused to get down on the ground, and then violently struggled with the officers in stairwell. <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991)(police officer's pursuit of defendant does not constitute "seizure" absent physical contact with defendant or evidence that defendant yielded to show of authority); <u>United States v. Sealey</u>, 30 F.3d 7, 9 (1st Cir. 1994). Relying on all of the facts leading up to this moment, there is no issue that the police were entitled to stop the defendant. Terrence Phillips indicated that the person inside the apartment was armed, and the defendant's conduct only bolstered the concern that he in fact possessed a weapon. He refused to open the door for the police when they arrived. When he finally did so, he was confrontational. And instead of

dealing with the police, he attempted to flee past them out the building.

Even assuming for the sake of argument that these facts do not support a finding of probable cause, they unquestionably supported a reasonable articulable suspicion that the defendant was armed. The articulable suspicion standard is not a stringent one. "The Fourth Amendment requires `some minimal level of objective justification' for making the stop." United States v. Sokolow, 490 U.S. 1, 7 (1989), quoting, INS v. Delgado, 466 U.S. 210, 217 (1984) (Emphasis added). As stated by the United States Supreme Court:

> That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," Illinois v. Gates, 462 U.S. 213, 238 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause, see United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544 (1985).

United States v. Sokolow, 490 U.S. at 7; see also United States v. Jackson, 918 F.2d 236, 239 (1st Cir. 1990). Accordingly, because the officers by virtue of Terrence Phillip's information and their own interaction with the defendant had every reason to suspect he was armed, they were entitled to at least stop him to investigate further. And to be clear, given the defendant's recalcitrant and potentially violent resistance, this included the right to physically subdue and handcuff him.

5

See <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)(Where the Supreme Court "recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.")

    Finally, even assuming that the arrest/stop of the defendant were found to be unlawful, it would not aid the defendant here. The police did not elicit any statements from the defendant and did not recover any contraband from his person. On the contrary, the only thing the police obtained from the defendant following his arrest was his name. The defendant's identity played no role in the affidavit submitted to obtain the search warrant, and the sole use the police made of his identity with respect was to the photo arrays was to use it to obtain a booking photo for inclusion. This fact is notable here because the Supreme Court has held that "[t]he body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1039 (1984). Accordingly, because the only evidence the police used from the defendant's arrest itself in furtherance of the photo arrays and search warrant was his identity, which is always admissible, the subsequent identifications and evidence recovered during the

6

search would not constitute unlawful fruit.[1]

**Conclusion**

In light of the foregoing, the police did not violate any of the defendant's protectible interests. The Court therefore should deny the defendant's motion to suppress.

```
                              Respectfully submitted,
                              MICHAEL J. SULLIVAN
                              United States Attorney
                   By:
                              /s/Donald L. Cabell
                              DONALD L. CABELL
                              Assistant U.S. Attorney
```

---

[1] Even were one to assume that some aspect of the arrest other than the defendant's identity played a role in the decision to seek a search warrant, it would not require suppression of the evidence here because the search warrant was based primarily on other events or factors.  As the Supreme Court stated in Wong Sun, "We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police.  Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).  As the search warrant affidavit, which is attached to the defendant's motion as Exhibit A, makes clear, the defendant's actual arrest had little if anything to do with the search warrant.  Rather, the search warrant was based principally on Terrence Phillips' 911 call, the officers' observations and interactions with the defendant, the defendant's behavior when he left the apartment, and the identification of the defendant from the arrays by Terrence Phillips and Wullinda Jones.  Accordingly, the items recovered during the search were obtained by "means sufficient to have purged the taint of the initial illegality." See e.g., United States v. Guevara-Martinez, 262 F.3d 751, 755 (8th Cir. 2001).