UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10164-DPW |
| | ) | |
| SHON ROWELL | ) | |

DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO SUPPRESS (SEARCH AND SEIZURE)</u>

The government's Supplemental Memorandum attempts to justify the Boston Police Department's actions in physically subduing Rowell in the hallway of 25 Wayne St., Apartment #9 as a legal seizure. Alternatively, it argues that the police actions, even if illegal, don't matter. For the reasons that follow, defendant submits that the government is wrong on both counts.

I. The Confrontation Outside of Apartment #9 Was An Arrest <u>Unsupported by Probable Cause</u>.

The government continues to straddle the fence as to whether Boston Police officers effected and arrest based on probable cause or whether they were merely conducting a <u>Terry</u>-style stop. <u>Compare</u> Government's Memo at 4 and 6 (suggesting defendant's actions outside the apartment established probable cause) with Government's Supplemental Memorandum at 4-5 (discussing <u>Terry</u> articulable suspicion standard). There can be no question, however, that the Boston Police subjectively intended to arrest Rowell from the very first moments after Terrence Phillips' telephone call from the payphone on Blue Hill Avenue. Officer

Brian Smigielski employed a ruse to get the person inside to open the door; the only logical inference is that, once the apartment door was open, he would forcibly enter and subdue any and all occupants.  Failing to get the desired result, Smigielski requested permission from the supervising Sergeant, Gus Frangie, to kick the door down and enter.  At the same time he denied Smigielski permission to kick in the door, Frangie immediately began taking steps to assemble the SWAT-like Entry Team to go into the apartment.  The dog unit was requested.  Each of these steps was put into motion notwithstanding the fact that the police then possessed no arrest or search warrant to enter the dwelling-place.  Apparently, neither Frangie (nor anyone else) made any attempt to secure an arrest or search warrant notwithstanding the fact that the building had been secured pending the arrival of the Entry Team.

This subjective intent was manifested in objective ways. Backtracking from the initial ruse, officers stated they were actually police officers and continued to bang on the door asking the occupants to come out.  Rowell's request that the then-unknown people outside produce particular officers he knew and would talk to were ignored.  These police actions in surrounding the building, as Jacqueline Santiago testified, were such that Rowell felt compelled to leave the apartment with his hands up to face up to four officers with guns drawn.

The Boston Police Department's actions to this point - before a gun had been observed by the police or Terrence Phillips' allegations had otherwise been corroborated[1] - conclusively demonstrate that Rowell's exit to the waiting gun-drawn officers was far from a consensual police encounter that Rowell was free to terminate. Florida v. Bostick, 501 U.S. 429, 437 (1991)(Fourth Amendment seizure occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"). Indeed, as all of the officers testified, once he opened the door and left the apartment Rowell's compliance with officers orders was compelled. Thus, this was not a police-citizen encounter where the officers merely rolled down their window and asked defendant for a moment of his time. Compare United States v. Cardoza, 129 F.3d 6, 14-15 (1st Cir. 1997)(no seizure where officers in unmarked car pulled over

---

[1] The government is understandably vague as to what facts constituted probable cause to arrest some or all of the occupants of Apartment #9 at the time Frangie was requesting the Entry Team to make a forced entry into the apartment. The sum total of "facts" known to the officers as to what crime might have been committed came solely from Terrence Phillips, who police knew had a criminal record, and who himself admitted that the officers were continually questioning and threatening him concerning whether he was making a false report. See United States v. Khounsavanh, 113 F.3d 279, 284 (1st Cir. 1997) (veracity inquiry requires corroborative facts to reduce "the probability of a lying or inaccurate informer").

to curb; rolled down window and asked the defendant "what's up?"; and defendant turned and approached patrol car); <u>United States v. Young</u>, 105 F.3d 1, 5-6 (1997)(no seizure where officers pulled cruiser to curb alongside the defendant; rolled window down and asked defendant if he had a minute to speak with them; and defendant said "sure").  Rather, this was a circumstance where the presence of many officers, substantial physical touching of the person of the citizen, and immediate restraint of liberty indicated that compliance with the officer's orders was compelled.  <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)("the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled" are examples of circumstances that might indicate a seizure tantamount to an arrest).

     The government, relying on <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991), contends that even if the Boston Police did not have probable cause to arrest Rowell as he came out of Apartment #9, they were entitled to take whatever means necessary to subdue Rowell in their quest to conduct a <u>Terry</u>-style stop because he had not yet been seized.  Government's Supplemental Memorandum at 4.  The government's reliance on <u>Hodari D.</u> is misplaced.  The only issue in <u>Hodari D.</u> was whether, at the time the defendant

dropped some drugs, he was seized within the meaning of the Fourth Amendment.  Id. at 624.  The Court held that a police officers call for the defendant to "Stop!" was not in and of itself a seizure.  Id. at 626.  In so doing, the Court specifically acknowledged that the "mere grasping or application of physical force with lawful authority" is sufficient to constitute an arrest.  Id. at 624.  It is only when this physical component is absent does Hodari D.'s "submission to authority" rationale become relevant.  Id. at 626.

Here, each of the officers testified that they were, in one way or another, physically restraining Rowell from walking out of the hallway of 25 Wayne St.  Consequently, this was no call to submit to authority; rather, it was the physical "laying on of hands or application of physical force to restrain movement" that even the Hodari D. court recognized as an arrest.  Id.  Accord United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994)(defendant not seized because the call, "Hey Steven, what's up?" not a physical restraint).  In this regard alone, Hodari D. is inapplicable.

Moreover, unlike the case in either Hodari D. or Sealey, Rowell's attempt to walk away, notwithstanding officers' gunpoint orders to get to the floor, revealed no further evidence that tipped the probable cause calculus to justify arrest.  In both Hodari D. and Sealey, the flight after verbal command resulted in

the abandonment of contraband.  The discarded contraband itself produced probable cause for the subsequent seizure and arrest. Here, by contrast, Rowell exited the apartment with his hands up and repeatedly stated that he would not struggle.  His failure to immediately get to the ground as ordered by the officers added nothing to any probable cause analysis.

In short, Hodari D. and its progeny are inapplicable to the facts of this case.  The Boston Police Department's actions in physically subduing Rowell at gunpoint were a physical seizure constituting an arrest.  That arrest was unsupported by probable cause and its fruits must be suppressed.

II.  Suppression Is Warranted Here Because It Serves the Exclusionary Rule's Prophylactic Purpose.

The government, relying on broad language included in INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984), argues that Rowell's illegal arrest is not redressible by suppression of the fruits of that arrest because the only fruit was his identity. Government's Supplemental Memorandum at 6-7.  The government's argument is factually and legally faulty.

The government itself recognizes that it was much more than Rowell's identity that was contained in the subsequent search warrant.  As the government notes, the search warrant made liberal and significant use of the arrest in the search warrant affidavit, including "the officers' observations and interactions with the defendant [and] the defendant's behavior when he left

-6-

the apartment." Government's Memorandum at 7 n.1. Consequently, the case at bar is far different from the situation where a defendant seeks to wipe an entire prosecution null and void because of officers' illegal actions in ascertaining his name ab initio. See Lopez-Mendoza, supra, and cases cited.[2]

In any event, the government's argument that Rowell's identity (and later, the gun) is not suppressible as fruit of the unlawful arrest fails to recognize that suppression may be appropriate when it serves the exclusionary rule's prophylactic purpose of deterring police misconduct. United States v. Stewart, 337 F.3d 103, 106 (1st Cir. 2003); see United States v. Osorio, 929 F.2d 753, 763 (1st Cir. 1991)(noting the availability of supervisory powers to, inter alia, remedy violations of recognized rights and deter illegal conduct). The Court retains this power even in a case where suppression may not be required. Stewart, 337 F.3d at 106. See United States v. Payner, 447 U.S. 727, 736 (1980) (affirming existence of a court's traditional supervisory power as a prophylactic complement to, rather than a

---

[2] The government seems to suggest that the search warrant affidavit still provided probable cause even if the circumstances of the arrest were excised from it. Government's Supplemental Memorandum at 7 n.1. Even assuming, arguendo, the government's position, its argument ignores the fact that (as set forth below) key portions of the remaining asseverations - Willunda Jones' explanation of the 141 Homestead incident and her identification of Rowell as participating - are themselves tainted by the omission of the fundamental inconsistency between her report and Santiago's version.

-7-

doctrinal substitute for, Fourth Amendment violations). Supervisory power may be exercised and indeed is most needed where, as here, the deterrence is of conduct directed to the "sanctity of the court itself." United States v. Cortina, 630 F.2d 1207, 1216 (7th Cir. 1990). In this case, the Boston Police Department's disturbing pattern of actions warrant suppression. The Court could (and should) find the following based on the testimony at the motion to suppress:

- that Officer Smigielski in his testimony misrepresented the fact that he met with Terrence Phillips before going up to Apartment #9;

- that Officer Smigielski, based solely on the dispatcher's report that an unidentified caller from a payphone said there was a man with a gun at 25 Wayne St., Apartment #9, was prepared to enter and subdue occupants of the apartment;

- that Officer Smigielski used a ruse (identifying himself as someone else) in order to have occupants open the door so he could enter;

- that Officer Smigielski in his testimony misrepresented the fact that he used such a ruse;

- that Sergeant Frangie called the Entry Team with the intention to enter a dwelling based solely upon the allegations of Terrence Phillips, a witness about whom the police were themselves expressing doubts given his story and

> prior record;

- that Boston Police, as early as their interview of Jacqueline Santiago in Apartment #9 but no later than their ensuing interview of her at the police station, learned that an earlier incident at 141 Homestead St. was drug-related;

- that Santiago's description was thus materially different than that given by Willunda Jones, the other percipient witness, who told police she the innocent victim of a robbery for cash;

- that Sergeant Detective Gallagher, the supervising detective responsible for reviewing the search warrant affidavit, knew of the materially different versions of the incident but failed to include this fact in the search warrant presented to the state district court.

The misconduct by the Boston Police Department at each of these steps was intentional rather than the result of simple negligence. The intentional misrepresentations by witnesses before this Court and the obvious, knowing, and material omissions from a search warrant reflect a pattern of actions that warrant suppression. See Osorio, 929 F.2d at 763 (while recognizing inherent supervisory powers, declining to invoke them where misconduct only negligent, albeit "astounding"). This pattern - misrepresentations in an affidavit compounded by misrepresentations on the witness stand before this Court -

represent an especially compelling case for the exercise of the Court's discretion to suppress. Cortina, 630 F.2d at 1214 (7th Cir. 1990)(agent's disobedience of law by both lying in search warrant affidavit and on witness stand makes the call for supervisory power "its strongest and most defensible"). The Court should therefore exercise that discretion and suppress the firearm and other evidence subsequently seized from 25 Wayne St., Apartment #9.

## CONCLUSION

For the foregoing reasons, as well as those included in Defendant's Memorandum of Law in Support of Motion to Suppress, the defendant respectfully moves that this Court suppress from evidence at trial a gun and any other items allegedly observed or seized from 25 Wayne St., Apartment #9 on March 1, 2004.

                                       SHON ROWELL,
                                       By His Attorney:

                                       /s/ Timothy Watkins
                                       Timothy Watkins
                                        B.B.O. #567992
                                       Federal Defender Office
                                       408 Atlantic Ave., Third Floor
                                       Boston, MA  02110
                                       (617) 223-8061

July 13, 2005